IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

**SUZANNE M. JEFFERSON,**

        **Plaintiff**

v.                                       **CIVIL ACTION NO. 3:05cv652**

**BRINER, INCORPORATED, et al.,**

        **Defendants.**

### MEMORANDUM OPINION

This matter is before the court on the Plaintiff's Motion for Default Judgment as against the Defendant The Mortgage Store Financial, Incorporated ("MSF") (docket entry no. 80), the Clerk having previously entered default against MSF on January 13, 2006 (docket entry no. 27) for failure of MSF to respond to the Plaintiff's original complaint. The court previously granted summary judgment in favor of the answering defendants, Briner, Incorporated ("Briner"), and Carteret Mortgage Corporation ("Carteret") (docket entry nos. 73-74), as to all of the Plaintiff's claims as stated in her Amended Complaint.[1] The Plaintiff now seeks a default judgment against

---

[1] The Plaintiff's Amended Complaint only sought to impose liability against the Defendants Briner and Carteret with no claim being asserted against MSF. Thus, the Plaintiff was not required to serve MSF with the Amended Complaint. See Fed. R. Civ. P. 5(a) ("No service need be made on parties in default for failure to appear *except that pleadings asserting new or additional claims for relief* against them shall be served upon them in the manner provided for service of summons in Rule 4.") (emphasis added). However, for purposes of deciding whether a default judgment against MSF would be "inconsistent" with this court's prior ruling granting summary judgment in favor of Briner and Carteret, *see infra* at 5 (citing Frow v.

-1-

MSF[2] despite the fact that the answering Defendants have been previously exonerated from all liability. For the reasons set forth herein, the Plaintiff's motion is GRANTED in part and DENIED in part.

**Facts and Procedural History**

A defendant in default admits the factual allegations of the claim for relief. See Fed. R. Civ. P. 8(d); Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001); GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted....") (citations omitted). The undisputed material facts (Facts) and relevant procedural history on which default judgment against MSF is sought, as previously found by the court and as supplemented now in specific reference to MSF, are as follows:

1. Briner operates as a mortgage banker, mortgage loan specialist, and broker. (Mem. Op. of June 21, 2006, *Material Facts Not in Dispute* (Findings), ¶ 1.)

2. Carteret acted as a mortgage broker in the transaction at issue in this case. (Id. ¶ 2.)

3. The Plaintiff and Ralph Johnson ("Johnson"), a Briner employee, discussed the Plaintiff's interest in obtaining mortgage financing to purchase or build a residence. (Id. ¶ 3.)

4. On June 13, 2004, Briner provided the Plaintiff with a conditional loan pre-approval letter and began assisting her in a search for finding financing of the loan. On July 3, 2004,

---

De La Vega, 82 U.S. (15 Wall.) 552 (1872)), this court must also consider the facts alleged in the Amended Complaint as they pertain to Briner and Carteret. Accordingly, the court has accepted as true all allegations made in the *original* Complaint against MSF (due to MSF's default), and the undisputed facts as determined by this court in its prior summary judgment ruling concerning Briner and Carteret to the extent that such undisputed facts do not provide the basis for any new claim against MSF.

[2] The Plaintiff's Motion for Default Judgment seeks to hold MSF liable only on her Equal Credit Opportunity Act (ECOA) and Truth in Lending Act (TILA) claims. (See docket entry no. 81.)

        Johnson informed the Plaintiff that she had been approved with Briner. The communication further advised the Plaintiff that "[l]oan processing [would] begin upon *receipt of a ratified sales contract*. (Id. ¶ 5) (emphasis added).

5. However, Johnson thereafter retracted his earlier representation that the Plaintiff would qualify for a loan, and before Briner's receipt of any ratified sales contract, he informed her that Briner could not, in fact, extend her a loan based on her credit score. (Id. ¶ 6.)

6. Notwithstanding, Johnson informed the Plaintiff that he thought she could qualify for a 100 percent conventional loan through Defendant Carteret. (Id. ¶ 8.)

7. Subsequently, the Plaintiff submitted a loan application to Carteret on July 16, 2004, and Carteret obtained the Plaintiff's credit report on the same date. (Id. at ¶ 9.)

8. In connection with her loan application with Carteret, the Plaintiff signed a Borrower Certification & Authorization (the "Certification"). The Certification confirmed that the Plaintiff had applied for a loan with Carteret, and it specifically authorized Carteret to order a consumer credit report and verify the Plaintiff's credit information only for purposes of processing the Plaintiff's mortgage loan application. (Id. ¶ 11.)

9. Carteret then sent the Plaintiff's loan application to MSF. (Id. ¶ 13.) On or about July 26, 2004, MSF informed the Plaintiff that she had received conditional pre-approval for mortgage financing. (Id. ¶¶ 13, 15.; Compl. ¶ 13.)

10. The settlement/closing date for the purchase of the subject property was to be on or about August 20, 2004. (Findings ¶ 16.)

11. On September 14, 2004, MSF decided not to extend Jefferson a loan, in part, because her credit score was no longer high enough to support the mortgage loan she had sought. (Id. ¶ 19; Compl. ¶ 15.) MSF sent two denial notices to a representative of Carteret which were not forwarded to the Plaintiff. (Findings ¶ 19; Compl. ¶¶ 17-18.)

12. Carteret formally participated in MSF's decision not to extend a loan to the Plaintiff. (Findings ¶ 20.)

13. The appraisal report that was required for a completed application was forwarded to Carteret on September 21, 2004, after MSF withdrew its conditional pre-approval for the financing. (Id. ¶ 22.)

14. As a result of MSF's acts, the Plaintiff was forced to withdraw from a sales contract to purchase a residence and she suffered monetary damages related to MSF's acts. (Compl. ¶ 20.)

15. The Plaintiff's original Complaint alleged eight causes of action against the Defendants including, *inter alia*, violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, for which she sought to hold the Defendants jointly and severally liable. (Id.)

16. MSF never responded to the Complaint that was properly served on it and, accordingly, the Clerk entered a default against MSF on January 13, 2006 (docket entry no. 27). The Plaintiff amended her Complaint thereafter, with the leave of court, by which she sought to impose liability only against Briner and Carteret, once again alleging, *inter alia*, violations of ECOA and TILA (docket entry no. 41.)

17. The court granted summary judgment in favor of Briner and Carteret on June 21, 2006, on all of the Plaintiff's claims as stated in the Amended Complaint (docket entry nos. 73-74.)

18. The Plaintiff now seeks the entry of default judgment against MSF only with respect to the ECOA and TILA claims as set forth in the original Complaint. (See docket entry no. 81.)

## Analysis

Federal Rule of Civil Procedure (Rule) 55 sets forth a two-step process for obtaining a default judgment. Subsection (a) of the Rule calls for an entry of default when a party has failed to file a responsive pleading "or otherwise defend" the action within the applicable time limit. F. R. Civ. P. 55(a). Here, Rule 55(a) was satisfied when the Clerk entered an order of default against MSF on January 13, 2006, due to MSF's failure to file a responsive pleading after having been properly served with process. (Facts ¶ 15, 16.) But entry of the order of default does not automatically entitle a party to a default judgment; rather, subsection (b)[3] requires the court's

---

[3] Rule 55(b)(2) provides for entry of default judgment by the court

> "[i]n all other cases [where entry by the Clerk under Fed. R. Civ. P. 55(b)(1) is not appropriate] the party entitled to a judgment by default shall apply to the court therefor.... If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any

final action following entry of default by the Clerk under subsection (a).  Although the court has discretion to enter a default judgment against a defendant pursuant to Rule 55(b), see Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 8 (1980), default judgments are generally disfavored, Tazco, Inc. v. Dir., Office of Workers Comp. Program, U.S. Dep't of Labor, 895 F.2d 949, 950 (4th Cir. 1990).

This case presents the unusual situation where a plaintiff seeks a default judgment against one defendant, and yet the remaining, answering defendants have been exonerated from all liability.  Stated more precisely, where multiple defendants are alleged to be jointly liable and the answering defendants have prevailed, must the action against the defaulting defendant be dismissed (and entry of default judgment refused) so as to prevent inconsistent judgments among the joint defendants?  See Frow v. De La Vega, 82 U.S. (15 Wall.) 552, 554 (1872).

Frow is the leading case on the subject of the availability of default judgment in actions involving multiple defendants.  In that case, the Respondent on appeal, De La Vega, had sued fourteen defendants charging that each was jointly liable with the others for conspiracy to commit fraud against him in a land transaction.  When defendant Frow failed to respond, the trial court immediately entered a final judgment for full liability against him.  Id. at 553.  Following a trial on the merits, the remaining, answering defendants were found not to be liable.  Id.  As a result, De La Vega obtained judgment against Frow in which De La Vega was declared to be the proper holder of title to the property, while the remaining defendants had judgments declaring De

---

averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper...."

Fed. R. Civ. P. 55(b)(2).

La Vega's ownership claim to be invalid. The Supreme Court reversed this incongruous result, noting:

> The true mode of proceeding where a bill makes a joint charge against several defendants, and one of them makes default, is simply to enter a default…against him, and proceed with the cause upon the answers of the other defendants.

Id. at 554. The Court continued:

> But if the suit should be decided against the complainant on the merits,[4] the bill will be dismissed as to all the defendants alike – the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all. But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal.

Id.

Here, this court acted in accordance with Frow by waiting to address the issue of default judgment against MSF until the court first "proceed[ed] with the cause upon the answers of the other defendants," Briner and Carteret. Id. at 554. Accordingly, whether default judgment against MSF is appropriate is now ripe for decision.

In cases concerning the possibility of default judgment where multiple defendants are involved, the Frow precedent must be analyzed as it relates to Rule 54 of the Federal Rules of Civil Procedure. Rule 54(b) authorizes entry of a final judgment as to one of multiple defendants in a civil action following an express finding that there is "no just reason for delay." Fed. R. Civ. P. 54(b). And, if Frow still stands for anything, it explicates a cautionary warning to the courts:

---

[4] The fact that this case has been resolved at the summary judgment stage, rather than by virtue of a trial on the merits, is of no consequence. Courts have applied the Frow rule on summary judgment. See, e.g., Bastien v. R. Rowland & Co., 631 F. Supp. 1554, 1561 (E.D. Mo. 1986) (citing cases where the Frow rule has been extended to grant the benefits of a successful motion for summary judgment to a defaulting defendant), aff'd, 815 F.2d 713 (8th Cir. 1987).

logically inconsistent judgments resulting from an answering defendant's success on the merits and another defendant's suffering of a default judgment are to be avoided. Thus, the avoidance of logically inconsistent judgments in the same action and factually meritless default judgments provide "just reason for delay" within the meaning of Rule 54(b). See Phoenix Renovation Corp. v. Gulf Coast Software, Inc., 197 F.R.D. 580, 582 (E.D. Va. 2000) (Brinkema, J.).[5] In this case, the precise question in need of resolution is whether the entry of a default judgment against MSF would be inconsistent with the dispositive relief previously granted in favor of the answering defendants, Briner and Carteret.

Although many jurisdictions have narrowly construed Frow to bar entry of a default judgment against one of several defendants only if the theory for recovery is one of true joint liability,[6] the Fourth Circuit has interpreted Frow more broadly. The Fourth Circuit last revisited Frow almost forty years ago in United States ex rel. R.F. Hudson v. Peerless Ins. Co., 374 F.2d

---

[5] To prevent the possibility of inconsistent judgments, the court in Phoenix withheld entry of default judgment against the non-appearing defendant pending resolution of the claim(s) against the responding defendant. 197 F.R.D. at 584. This court proceeded similarly by declining to enter a default judgment against MSF until the Plaintiff's suit against the remaining defendants, Briner and Carteret, was resolved on the merits.

[6] See, e.g., McMillian/McMillian, Inc. v. Monticello Ins. Co., 116 F.3d 319 (8th Cir. 1997) (Frow not extended to situation where the co-defendants shared closely related interests but were not truly jointly liable); Whelan v. Abell, 953 F.2d 663, 674 (D.C. Cir. 1992) ("...in cases involving multiple defendants, a default order that is inconsistent with a judgment on the merits must be set aside only when liability is truly joint – that is, when the theory of recovery requires that all defendants be found liable if any one of them is liable – and when the relief sought can only be effective if judgment is granted against all.") (citation omitted), *amended at* No. 90-7016, 1992 U.S. App. LEXIS 6180 (D.C. Cir.), cert. denied sub. nom., Toomey v. Whelan, 506 U.S. 906 (1992); In re Uranium Antitrust Litig., 617 F.2d 1248, 1256-58 (7th Cir. 1980) (Frow rule not applicable when defendants are alleged to be jointly *and* severally liable); Int'l Controls Corp. v. Vesco, 535 F.2d 742, 746-47 n.4 (2d Cir. 1976) ("...at most, Frow controls in situations where the liability of one defendant necessarily depends upon the liability of the others"), cert. denied, 434 U.S. 1014 (1978).

942 (4th Cir. 1967), an action prosecuted against a contractor and a contractor's surety. In Hudson, the contractor answered the complaint and denied liability. Id. at 943. However, the surety failed to respond and the district court entered default judgment against it. Id. In holding the default judgment against the surety to be premature, the court of appeals held:

> Although Frow was a case of joint liability, we think the procedure established for multiple defendants by Rule 54(b) is strikingly similar and applicable not only to situations of joint liability but to those where the liability is *joint and/or several*.

Id. at 944 (emphasis added).

The court went on to note that even when co-defendants are alleged to be "closely interrelated," and one of the multiple defendants "establishes that plaintiff has no cause of action or present right of recovery, the defense generally inures also to the benefit of a defaulting defendant[.]" Id. at 945 (citations omitted). Thus, the Fourth Circuit has concluded that Frow applies not only to defendants who are alleged to be jointly liable, but also to those defendants thought to be jointly and/or severally liable, or who are otherwise closely interrelated.[7]

---

[7] Other Circuit Courts of Appeals have taken a similar stance to that of the Fourth Circuit when interpreting Frow. See In re: First T.D. & Inv., Inc., 253 F.3d 520, 532 (9th Cir. 2001) (extending Frow to certain circumstances where defendants have closely related defenses or are otherwise similarly situated, *even if not jointly and severally liable*, so as to avoid inconsistent judgments against multiple defendants); Lewis v. Lynn, 236 F.3d 766, 768 (5th Cir. 2001) (citing Hudson and holding that it would "'incongruous' and 'unfair' to allow some defendants to prevail, while not providing the same benefit to *similarly situated* defendants.") (citation omitted and emphasis added); Wilcox v. Raintree Inns of Am., Inc., No. 94-1050, 1996 U.S. App. LEXIS 1501, at *7-8 (10th Cir. Feb. 2, 1996) (unpublished) (extending Frow to cases where multiple defendants have "closely related" defenses); Gulf Coast Fans v. Midwest Elecs. Imp., 740 F.2d 1499, 1512 (11th Cir. 1984) (holding that "when defendants are *similarly situated*, but not jointly liable, judgment should not be entered against a defaulting defendant if the other defendant prevails on the merits" to be "sound policy") (emphasis added). Although the Circuits are split on the extent to which Frow applies, see *supra* footnote 6, the underlying theme of Frow is indisputable: logically inconsistent judgments among multiple defendants are to be avoided, and a finding of inconsistency will preclude the entry of default judgment against a non-appearing

**1. The ECOA Claim**

Frow bars this court from entering a default judgment against MSF on the Plaintiff's ECOA claim because a judgment against MSF would be necessarily inconsistent with this court's prior decision respecting the same claim against the answering defendants, Briner and Carteret. In her original Complaint, the Plaintiff asserts that MSF failed to provide her with any statement of reasons for the denial of credit, as mandated by ECOA. (Facts ¶ 11.) Accepting the allegation as true (as this court must, due to MSF's default), it would initially appear that the unchallenged allegation alone would sustain a violation of ECOA because MSF never gave the Plaintiff "written notification of [the] adverse action" to deny credit. See 15 U.S.C. § 1691(d)(2)(B).[8]

However, the ECOA required MSF to notify the Plaintiff of the adverse action only after having *first* received a "completed application for credit" from the Plaintiff. See 15 U.S.C. § 1691(d)(1). In addressing the Plaintiff's ECOA claims against Briner and Carteret, this court determined that the Plaintiff never submitted a completed application to receive a loan from defendant.

---

[8] 15 U.S.C. § 1691(d)(2)(B) states, in pertinent part:

> (2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by
> . . .
> (B) giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.

either Briner or Carteret, and thus it could not be held liable for purposes of the ECOA. See Opinion at 6-12 (reported as Jefferson v. Briner, Inc., 2006 U.S. Dist. LEXIS 41423, at *11-20 (E.D. Va. June 21, 2006)) (Briner I). It is undisputed that, after receiving the Plaintiff's "application," Carteret forwarded the application to MSF for loan approval purposes. And, it is equally undisputed that the "application" the Plaintiff initially gave to Carteret was the same "application" forwarded to MSF.[9] But if this "application" was all the while incomplete, then MSF cannot be held liable, as matter of law, under 15 U.S.C. § 1691(d)(2)(B), for if the application was incomplete when it was sent to Carteret, it was necessarily so when it was later forwarded to MSF. It would violate the precedent established by Frow to hold, on the one hand, that the application sent by the Plaintiff to Carteret was incomplete, while holding on the other hand that the exact same application later forwarded by Carteret to MSF was, in fact, complete. Frow was crafted to prevent this incongruous and illogical result. Therefore, to preclude the entry of inconsistent judgments, this court must DENY the Plaintiff's request for default judgment against MSF with respect to the Plaintiff's ECOA claim.[10]

---

[9] The application forwarded to MSF was necessarily incomplete if for no other reason than the fact that the required appraisal was not received until *after* MSF withdrew its conditional pre-approval of financing by issuing the denial notices that were forwarded to Carteret. (Facts ¶¶ 11, 13.)

[10] The Plaintiff suggests, in what the court assumes to be an alternative argument, that MSF is liable on a contractual theory for failing to provide the financing because it never withdrew its conditional pre-approval where it responded to the application with a counteroffer that was never withdrawn. Basic contract law nevertheless dictates that any counteroffer, accepted or not, operates as a rejection, *i.e.*, a denial of the earlier offer (the application, in this case). See Newman v. Snap-On Tools Corp., No. 87-0475, 1988 U.S. Dist. LEXIS 18385, at *3 (E.D. Va. Feb. 3, 1988) (citing Crews v. Sullivan, 113 S.E. 865 (Va. 1922)).

**2. The TILA Claim**

Even though judgment cannot lie against MSF under ECOA, the court's summary judgment decision in favor of Briner and Carteret does not preclude the Plaintiff from recovering against MSF under TILA.  As noted by the court in its earlier Memorandum Opinion addressing the alleged violations of TILA by Briner and Carteret:

> In order to prevail on a claim for a violation of 15 U.S.C. § 1638, and Regulation Z, 12 C.F.R. § 226.1, *et seq*., a plaintiff must demonstrate that the creditor failed to accurately state any one of the required disclosures such as the amount financed, the total number of payments, the finance charges, the annual percentage rate, the identity of the creditor, and an itemization of the amount financed.  A creditor must make the disclosures early and conspicuously in writing, in a form the consumer may keep, and it must do so before the credit is actually extended.  12 C.F.R. § 226.17(a)(1)(b).  A credit contract is consummated when a consumer signs a credit contract that binds the consumer to the credit terms.  Compton v. Altavista Motors, Inc., 121 F. Supp. 2d 932, 936 (W.D. Va. 2000).  Regulation Z requires that these disclosures must properly "reflect the terms of the legal obligations of the parties" and where the creditor is uncertain of the terms, the creditor is required to clearly state that the disclosure is an estimate and the estimate must be based on information reasonably available at that time.  12 C.F.R. § 226.17(c)(1)-(2).

Briner I, 2006 U.S. Dist. LEXIS 41423, at *25-26.

The facts of this case can be separated into two distinct transactions – the Plaintiff's first attempt at obtaining a loan through Briner, and the Plaintiff's second, distinct attempt at securing a loan through Carteret and MSF.  With regard to Briner, there could be no TILA liability because no sales contract was executed (as was a condition of the pre-approval) that could have required TILA disclosures, and "no transaction was ever consummated between [the Plaintiff] and Briner" so as to make Briner the payee of any obligation that would have involved TILA disclosures.  (Facts ¶¶ 4-5); Briner I, 2006 U.S. Dist. LEXIS 41423, at *28 (citing Scroggins v.

LTD, Inc., 251 F. Supp. 2d 1277, 1280 (E.D. Va. 2003) (TILA liability does not accrue *until* a credit transaction is consummated)). At the same time, Carteret is not liable under TILA because the Plaintiff acknowledged that "she never received any document that indicated Carteret *was to be the entity that would be receiving loan payments from her, nor was their any documentation Carteret was to be the payee* of any mortgage to be paid by Jefferson." Briner I, 2006 U.S. Dist. LEXIS 41423, at *27 (emphasis added). After examining the Plaintiff's original Complaint, it is clear that MSF incurs TILA liability for the same reasons Carteret was exonerated – MSF was the entity that would be receiving loan payments from the Plaintiff and was intended to be the payee of the mortgage.

As noted above, to prevail on a TILA claim, a plaintiff must demonstrate that the creditor failed to accurately state any one of the required disclosures such as the amount financed, the total number of payments, the finance charges, the annual percentage rate, the identity of the creditor, and an itemization of the amount financed. Id. at *25-26 (citing 12 C.F.R. § 226.17). These disclosures must be made in writing and must be given *before* the credit is actually extended. Id. at *26. In her Complaint, the Plaintiff generally alleges that MSF violated TILA by: (1) failing to accurately state the legal obligation between the parties at the time of disclosure, and by stating that the loan was approved, when they had in fact not secured the loan; and (2) failing to disclose the mortgage loan approval as an estimate.[11] (Compl. ¶¶ 33-35.)

It is not inconsistent to enter a default judgment on the Plaintiff's TILA claim against

---

[11] The Plaintiff's allegations respecting the TILA claim, though lacking particularity, are nonetheless sufficient to state a claim under the liberal notice pleading provisions of Rule 8(a) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8(a) ("A pleading which sets forth a claim for relief...shall contain (2) a short and plain statement of the claim showing that the pleader is entitled to relief....").

MSF. Carteret acted as a mortgage broker, not lender, in its transaction with the Plaintiff (Facts ¶ 2), and it was clearly not the entity to whom the Plaintiff would have been indebted had the Plaintiff's loan application been approved. However, MSF acted solely as a lender in its dealings with the Plaintiff. As a creditor for purposes of TILA, MSF was required to make certain disclosures pursuant to that Act. Accordingly, where the Plaintiff's Complaint alleged that MSF acted as a creditor that failed to make the requisite disclosures,[12] MSF is liable under TILA. The Plaintiff's motion for default judgment against MSF on the TILA claim must therefore be GRANTED.

**Conclusion**

The Plaintiff having withdrawn her claims against MSF on all grounds except for violation of ECOA and TILA, this court finds, based on the relevant allegations of the Complaint and relevant undisputed facts, that MSF's position is so "closely interrelated" to that of the remaining defendants, Briner and Carteret, that it would be inconsistent to grant default judgment against MSF on the Plaintiff's ECOA claim while having found otherwise with regard to Briner and Carteret. See Hudson, 374 F.2d at 944-45. However, default judgment against MSF is proper with respect to the Plaintiff's TILA claim(s) because the facts, transactions, and purposes engaged in and occupied by all three defendants are sufficiently distinct such that inconsistent

---

[12] Although this court previously found that the Plaintiff received unspecified TILA disclosures from Carteret (not MSF), the sufficiency of such disclosures was not addressed where they were not made part of the record. Regardless, the Plaintiff's Complaint alleges that any disclosures provided by MSF were inadequate. (Compl. ¶¶ 34-35). Accepting the allegation as true, as it must, this court necessarily concludes that any disclosures made by Carteret and "adopted" by MSF were lacking such that imposition of TILA liability against MSF is proper.

judgments do not result. See Frow, 82 U.S. (15 Wall.) at 554. Therefore, default judgment will be entered against MSF on the Plaintiff's TILA claim in the amount of $1,000.00 in statutory damages, as demanded by the Plaintiff,[13] plus costs of $250.00 for the filing fee,[14] and reasonable attorney's fees and costs.[15] In this latter regard, the court has reviewed the related submissions of Plaintiff's counsel in accordance with governing principles[16] and finds that the total amount of requested fees of Six Thousand Six Hundred and 00/100 ($6,600.00) Dollars for a total of thirty three (33) hours of effort at the rate of Two Hundred and 00/100 ($200.00) Dollars per hour, is

---

[13] The Plaintiff is only entitled by statutory proscription in TILA to a single recovery for multiple failures to disclose required information in the same transaction. 15 U.S.C. § 1640(g).

[14] The same filing fee was required regardless of the number of parties.

[15] Both ECOA and TILA entitle a prevailing party to recover reasonable attorney's fees and costs incurred in the prosecution of either action. See 15 U.S.C. § 1691e(d) (ECOA) and 15 U.S.C. § 1640(a) (TILA)

[16] When attorney's fees and costs are permissible, a federal court determines the award by first determining the lodestar amount (reasonable hourly rate multiplied by hours reasonably expended), applying certain factors expounded by the Supreme Court and adopted by the Fourth Circuit, and then adjusting the lodestar amount, if deemed appropriate, to take into account any special circumstances. See Hensley v. Eckerhart, 461 U.S. 424, 434 n.9 (1983); Daly v. Hill, 790 F.2d 1071, 1077 (4th Cir. 1986). Those twelve factors are: (1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; (3) the skill required properly to perform the legal service; (4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in similar cases. Daly, 790 F.2d at 1075 n.2. The lodestar figure is presumptively reasonable. Blum v. Stenson, 465 U.S. 886, 897 (1984). Here, the court has considered each factor and concludes that the Plaintiff's supplemental request is reasonable. In this same regard, even though the court could have reduced the total amount requested because the Plaintiff did not prevail on all claims against MSF, it concludes that such an adjustment would be nullified in any event by consideration of the complexity of the issues that were involved that would have, at the same time, justified an offsetting increase in the lodestar figure.

not unreasonable given the complexity of the multiple issues involved.  Additionally, counsel's effort to distinguish between successful efforts in obtaining default judgment against MSF and the unsuccessful result involving the answering defendants, and counsel's stated level of experience and expertise support an hourly rate that is also in the lower range of prevailing rates in the relevant market area with which the court is familiar from its own knowledge and experience and other fee petitions that the court has considered in other cases over time.  See, e.g., Moncada v. Evan Energy Co., No. 3:03cv240 (E.D. Va. Dec. 10, 2003) (Dohnal, J.) (Approving rate of $215 per hour in ERISA claim); Withers v. Eveland, 997 F. Supp. 738, 740 (E.D. Va. 1998) (Merhige, J.) (Accepting rate of $200 per hour for experienced consumer protection practitioner).

      An appropriate order shall issue.

                                                             /s/
                                          Dennis W. Dohnal
                                          United States Magistrate Judge

Dated: 11/6/06